NO. 24-1595
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

COREY TUCKER,
 *Plaintiff-Appellant*,

v.

UNITED WHOLESALE MORTGAGE, INC.,
 *Defendant-Appellee.*

_____

On Appeal from the United States District Court
for the Eastern District of Michigan, Southern Division

_____

# BRIEF OF DEFENDANT-APPELLEE

_____

James W. Rose (P66473)
Taft Stettinius & Hollister LLP
Attorneys for Defendant-Appellee
27777 Franklin Rd., Ste. 2500
Southfield, MI 48034
(248) 351-3000
jrose@taftlaw.com

170024594v5

## DISCLOSURE OF CORPORATE
## AFFILIATIONS AND FINANCIAL INTEREST

Pursuant to 6 Cir. R. 26.1, Appellee makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?

    Yes.

    Parent corporation/affiliate name: UWM Holdings Corporation, a Delaware corp. and public company.

    Relationship with named party: United Wholesale Mortgage is a subsidiary of, and owned in part by, UWM Holdings Corporation.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

    No.

Date: December 23, 2024          Respectfully submitted,

                                  /s/ James W. Rose
                                 James W. Rose (P66473)
                                 Taft Stettinius & Hollister LLP
                                 Attorneys for Defendant-Appellee
                                 27777 Franklin Rd., Ste. 2500
                                 Southfield, MI 48034
                                 (248) 351-3000
                                 jrose@taftlaw.com

170024594v5

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................ iv

STATEMENT IN SUPPORT OF REQUEST FOR ORAL ARGUMENT .............x

STATEMENT OF JURISDICTION........................................................ xi

COUNTER-STATEMENT OF ISSUE PRESENTED FOR REVIEW ................ xii

INTRODUCTION ............................................................................1

COUNTER-STATEMENT OF THE CASE ............................................2

    The parties and the Employment Agreement ...................................2

    The relevant contract terms ........................................................3

    Tucker's claims........................................................................4

    Procedural history ....................................................................6

SUMMARY OF ARGUMENT ...........................................................7

ARGUMENT ................................................................................8

I.    THE DISTRICT COURT CORRECTLY COMPELLED TUCKER
    TO ARBITRATE HIS CLAIMS.....................................................8

    A.    The standard of review is de novo. ......................................8

    B.    The relevant statutory framework compels arbitration. ........................9

    C.    Various pending Michigan Supreme Court applications, and
        their potential impact on Michigan public policy, do not affect
        the District Court's ruling. ..............................................11

    D.    The District Court correctly concluded that the parties entered
        into an agreement to arbitrate............................................13

    1.    There was mutuality of agreement.................................135

a.    The way the agreement was presented does not affect mutuality..... 16

b.    Tucker's purported lack of memory and understanding also do not affect whether a contract was formed. .............................................. 18

c.    Tucker's argument regarding whether the contract was "explained" to him is meritless. ........................................................ 18

E.    All known case law supports the District Court's decision. ...............24

F.    Tucker's new argument regarding "procedural fairness" is unpreserved, and also meritless..........................................................29

G.    Dismissal was appropriate...................................................................33

CONCLUSION AND RELIEF REQUESTED .......................................................35

CERTIFICATE OF COMPLIANCE.....................................................................36

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS .............37

170024594v5

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abell v. Sky Bridge Res., LLC*,
    715 F. App'x 463 (6th Cir. 2017) ...................................................................29

*ABM Farms, Inc. v. Woods*,
    81 Ohio St. 3d 498 (1998) ...............................................................................32

*Allied Steel and Conveyers, Inc. v. Ford Motor Co.*,
    277 F.2d 907 (6th Cir. 1960) ...........................................................................21

*American Heritage Life Insurance Company v. Orr*,
    294 F.3d 702 (5th Cir. 2002) ...........................................................................32

*AT&T Techs., Inc. v. Communications Workers of Am.*,
    475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).....................................25

*Bannister v. Knox Cnty. Bd. of Educ.*,
    49 F.4th 1000 (6th Cir. 2022) ..........................................................................29

*Boykin v. Fam. Dollar Stores of Michigan, LLC*,
    3 F.4th 832 (6th Cir. 2021) ........................................................................*passim*

*Brennan v. Bally Total Fitness*,
    198 F.Supp.2d 377 (S.D.N.Y. 2002) .................................................................31

*Brown v. Heartland Emp. Servs., LLC*,
    No. 19-11603, 2020 WL 2542009 (E.D. Mich. May 19, 2020)................*passim*

*Brown v. U.S. Xpress, Inc.*,
    No. 1:23-CV-1200, 2024 WL 2700079 (W.D. Mich. May 24, 2024) ..............34

*Burden v. Check Into Cash of Kentucky, LLC*,
    267 F.3d 483 (6th Cir. 2001) .............................................................................8

*Byrd v. Haas*,
    17 F.4th 692 (6th Cir. 2021) ............................................................................29

*Cacevic v. City of Hazel Park*,
    226 F.3d 483 (6th Cir. 2000) .............................................................................9

iv

*Circuit City Stores v. Adams*,
532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) ....................................13

*Clark v DaimlerChrysler Corp*,
268 Mich App 138, 142; 706 NW2d 471 (2005) ...............................................11

*Cooper v. MRM Inv. Co.*,
367 F.3d 493 (6th Cir. 2004) ...............................................................12, 13, 28

*Davis v. Ally Fin. Inc.*,
No. 23-22897, 2024 WL 2239144 (D.N.J. May 17, 2024) ...............................34

*Debro v. French*,
15-14225, 2017 WL 927622 (E.D. Mich. Feb. 16, 2017) .................................28

*DeOrnellas v. Aspen Square Mgmt., Inc.*,
295 F. Supp. 2d 753 (E.D. Mich. 2003) ..........................................................20

*Deutsche Bank Nat. Tr. Co. v. Tucker*,
621 F.3d 460 (6th Cir. 2010) ..............................................................................9

*Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
961 F.2d 1148 (5th Cir. 1992) ..........................................................................32

*EEOC v. Waffle House, Inc.*,
534 U.S. 279 (2002).....................................................................................10, 33

*Fazio v. Lehman Bros.*,
340 F.3d 386 (6th Cir. 2003) ..................................................................9, 10, 12

*Gavette v. United Wholesale Mortgage*,
No. 23-cv-11856 (E.D. Mich. July 31, 2023)....................................................19

*Great W. Mortgage Corp. v. Peacock*,
110 F.3d 222 (3d Cir. 1997) .........................................................................8, 13

*Green v. Ameritech Corp.*,
200 F.3d 967 (6th Cir. 2000) .............................................................................33

*Hardaway v. Aveanna Healthcare*,
LLC, No. 23-12246, 2024 WL 2271826 (E.D. Mich. May 20, 2024) ...15, 20, 31

v

*Hayward v. Cleveland Clinic Found.*,
759 F.3d 601 (6th Cir. 2014) .............................................................29

*Heiges v. JP Morgan Chase Bank, N.A.*,
521 F. Supp. 2d 641 (N.D. Ohio 2007) .............................................30

*Hejamadi v. Midland Funding, LLC*,
No. 18-cv-13203, 2024 WL 3159316 (D.N.J. June 25, 2024) ...........34

*Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*,
350 F.3d 568 (6th Cir. 2003) .............................................................25

*Hillery v. Genisys Credit Union*,
No. 23-11452, 2023 WL 6627969 (E.D. Mich. Oct. 11, Case 2:23-cv-13134-SFC-APP ECF No. 6, PageID.48 Filed 01/10/24 Page 21 of 24 12 2023) ........27

*Hooks v. Saxon Mortg., Inc.*,
No. 1:05CV2651, 2006 WL 8448335 (N.D. Ohio June 20, 2006).........30, 31, 32

*Hunt v. Macy's Retail Holdings, Inc.*,
08-14307-BC, 2009 WL 349359 (E.D. Mich. Feb. 10, 2009) ...........28

*Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.*,
663 F.2d 4 (2d Cir. 1981) .............................................................21, 23

*Johnson v. Best Buy Co., Inc.*,
No. 363807, 2024 WL 1228760 (Mich. Ct. App. Mar. 21, 2024).....................22

*Kassandra Memmer v United Wholesale Mortgage*,
No.23-cv-10921 (E.D. Mich. Jan. 16, 2024) .....................................19

*Lancaster v. Comcast Comm's Mgmt. LLC*,
No. 16-14446, 2017 WL 3616494 (E.D. Mich. Aug. 23, 2017) ...................9, 10

*Liparoto Constr, Inc v Gen Shale Brick, Inc*,
284 Mich App 25; 772 NW2d 801 (2009) .......................................11

*Mazera v. Varsity Ford Mgmt. Servs.*,
LLC, 565 F.3d 997 (6th Cir. 2009).............................................15, 20

*McGee v. Armstrong*,
No. 5:11CV2751, 2014 WL 3012879 (N.D. Ohio July 3, 2014) .......................26

vi

*McIntyre v. First Fin. Grp.*,
No. 1:12-CV-00740, 2012 WL 5939931 (W.D. Mich. Nov. 27, 2012) ...............9

*Memmer v. United Wholesale Mortg.*,
No. 23-CV-11261, 2023 WL 8818298 (E.D. Mich. Dec. 18, 2023) ..............6, 19

*Milestone v. Citrus Specialty Grp., Inc.*,
No. 8:19-CV-2341-T-02JSS, 2019 WL 5887179 (M.D. Fla. Nov. 12, 2019),
*appeal dismissed*, No. 19-14935-JJ, 2020 WL 1243600 (11th Cir. Jan. 2, 2020)
..................................................................................................................26

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ................................................8

*Nitch v. E. Gateway Cmty. Coll.*,
No. 20-4016, 2021 WL 2030081 (6th Cir. May 21, 2021) ................................12

*Panepucci v. Honigman Miller Schwartz & Cohn LLP*,
281 F. App'x 482 (6th Cir. 2008) ..........................................................26

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967) ...................................14

*Rayford v. Am. House Roseville I, LLC*,
6 N.W.3d 63 (Mich. 2024) ..............................................................11

*Rayford v. Am. House Roseville I, LLC*,
No. 355232, 2021 WL 5984155 (Mich. Ct. App. Dec. 16, 2021) ......................11

*Rembert v. Ryan's Fam. Steak Houses, Inc.*,
596 N.W.2d 208 (Mich. App. 1999) ..................................................28

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010) (sending § 1981 action to arbitration) ................................27

*Richardson v. Universal Tech. Inst. of Ariz., Inc.*,
No. 1:06-CV-858, 2007 WL 1343672 (W.D. Mich. May 8, 2007) ....................27

*In re Ruehle*,
307 B.R. 28 (6th Cir. BAP 2004) .........................................................9

*Saidizand v. GoJet Airlines, LLC*,
6 N.W.3d 401 (Mich. 2024) ..............................................................11

vii

*Schwartz v. Next Net Media LLC, et al*,
　　No. 24-CV-10018, 2024 WL 3236709 (E.D. Mich. June 28, 2024) .................34

*Scottsdale Ins. Co. v. Flowers*,
　　513 F.3d 546 (6th Cir. 2008) .......................................................................12, 29

*Sears, Roebuck & Co. v. Lea*,
　　198 F.2d 1012 (6th Cir. 1952) .............................................................................21

*ShaZor Logistics, LLC v. Amazon.com, LLC*,
　　628 F. Supp. 3d 708 (E.D. Mich. 2022) ..............................................................27

*Smith v. Ameritech*,
　　129 F.3d 857 (6th Cir. 1997) ................................................................................9

*Smith v. Spizzirri*,
　　601 U.S. 472, 144 S. Ct. 1173 (2024) ...........................................................33, 34

*Solomon v. CARite Corp.*,
　　837 F. App'x 355 (6th Cir. 2020) .......................................................................31

*Stout v. J.D. Byrider*,
　　228 F.3d 709 (6th Cir. 2000) ...........................................................................8, 20

*Sutton v. U.S. Small Bus. Admin.*,
　　92 F. App'x 112 (6th Cir. 2003) .........................................................................20

*United States v. Plavcak*,
　　411 F.3d 655 (6th Cir. 2005) ................................................................................9

*Upton v. Tribilcock*,
　　91 U.S. 45, 23 L.Ed. 203 (1875) .........................................................................30

*Willis v. Dean Witter Reynolds, Inc.*,
　　948 F.2d 305 (6th Cir. 1991) ...............................................................................28

*Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp.*,
　　878 F.2d 167 (6th Cir. 1989) .................................................................................8

**Rules**

6 Cir. R. 26.1 ...........................................................................................................i

6 Cir. R. 28(b)(1)(B) ..............................................................................................ix

170024594v5

6 Cir. R. 34(a) ................................................................................. ix

Fed. R. App. P. 32(a)(5)(A) ........................................................... 36

Fed. R. App. P. 32(a)(7)(B)(i) ........................................................ 36

Fed. R. App. P. 32(f) ...................................................................... 36

Fed. R. Civ. P. 12 ............................................................................. 9

Fed. R. Civ. P. 12(b)(6) .................................................................... 6

Fed. R. Civ. P. 56 ...................................................................... 9, 14

**Statutes**

9 U.S.C. § 1 ................................................................................ 6, 9

9 U.S.C. § 2 .................................................................................. 10

9 U.S.C. §§ 3, 4 ............................................................................ 33

28 U.S.C. § 1291 ............................................................................. x

28 U.S.C. § 1331 ............................................................................. x

28 U.S.C. § 1367 ............................................................................. x

42 U.S.C. § 1981 .................................................................. x, 4, 27

42 U.S.C. § 2000e ................................................................... x, 5

MCL § 37.2101 ................................................................................ 5

## STATEMENT IN SUPPORT OF
## REQUEST FOR ORAL ARGUMENT

Defendant-Appellee United Wholesale Mortgage, LLC respectfully requests oral argument in this appeal. Under 6 Cir. R. 34(a), and pursuant to 6 Cir. R. 28(b)(1)(B), in light of the nuanced legal arguments raised in the District Court, oral argument will aid in a complete understanding of the issues on appeal.

## STATEMENT OF JURISDICTION

### District Court

This is a federal question action. (R.1, Complaint ¶¶3-4, PageID.2.) Jurisdiction was proper in the District Court under 28 U.S.C. § 1331, which grants District Courts jurisdiction over suits brought pursuant to Title I (42 U.S.C. § 1981, *et. seq.*) and Title VII (42 U.S.C. § 2000e, *et. seq.*) of the Civil Rights Act. Under 28 U.S.C. § 1367, the District Court had supplemental jurisdiction over Plaintiff's state law statutory claims. (R.1 at ¶5, PageID.2.)

### This Court

This Court has jurisdiction under 28 U.S.C. § 1291. On July 10, 2024, the District Court entered an order and judgment dismissing Plaintiff's claims. (R.13, PageID.113-124; R.14, PageID.125.) On July 16, 2024, Plaintiff filed a Notice of Appeal. (R.15.)

170024594v5

## COUNTER-STATEMENT
## OF ISSUE PRESENTED FOR REVIEW

I.    Did the District Court correctly order that Plaintiff's
      claims must be arbitrated?

      Plaintiff-Appellant says no.
      Defendant-Appellee says yes.
      The District Court would say yes.

## INTRODUCTION

Plaintiff Corey Tucker's claims are covered by a clear and unambiguous agreement to arbitrate, and the District Court correctly compelled arbitration.

Tucker signed an Employment Agreement when he began working for Defendant United Wholesale Mortgage, LLC ("UWM") in December 2021. He was fired in June 2022. His Employment Agreement states that any and all claims arising out of his employment—including discrimination and other statutory claims—can only be brought in arbitration, not federal court.

Tucker's complaint alleges that he encountered retaliation, discrimination, and harassment in violation of federal and Michigan statutory law. Specifically, he alleges his "white co-workers would hurl insensitive as well as racist comments at [him] based upon his status as a Black man." (R.1, Complaint, ¶11, PageID.3.) On appeal, he argues he was terminated for using the lavatory, while other employees who did the same were not terminated. (Brief of Appellant, Page 9.)

These are statutory causes of action alleging discrimination and related claims—precisely the type of claims covered by the arbitration provision in Tucker's Employment Agreement with UWM. That provision is clear and unambiguous, and the District Court correctly enforced it. As explained below, the District Court also correctly concluded that dismissal, rather than a stay, was appropriate in this case.

This Court should affirm.

1

## COUNTER-STATEMENT OF THE CASE

### *The parties and the Employment Agreement*

Tucker alleges he started working for UWM in December 2021. (R.1, Complaint, ¶7, PageID.2.) His complaint omits the fact that he and UWM entered into an Employment Agreement at the outset of his employment. (R.6-1, Employment Agreement, PageID.54-74.)

Tucker does not dispute or deny that he signed the Employment Agreement. Instead, he argues that he "do[es] not recall signing an arbitration agreement," and he states, "I was never told what I was signing nor did I understand the document or its significance." (Brief of Appellant, Pages 3, 8, citing Tucker Declaration, R.7-1 at ¶¶13-14, PageID.94.)

UWM provided evidence showing that Tucker signed the Employment Agreement. UWM's Assistant Vice President of Talent, Jeff Wohlgamuth, who supervised the hiring and onboarding process for new UWM employees when Tucker was employed by UWM, swore under oath that Tucker signed the contract. (R.6-1 at ¶¶1-3, PageID.53.) More specifically, when Tucker was hired, he created a profile in UWM's online system, known as the iCIMS system. (*Id*. at ¶¶2-3.) This included a unique login and password that were assigned to Tucker. (*Id*.) Tucker then used that profile to sign the Employment Agreement electronically. (*Id*. at ¶3.) The Employment Agreement itself shows that it was electronically signed by Tucker

2

on December 16, 2021, at 11:50 p.m. (R.6-1, PageID.69.) Tucker does not deny any of this, and he provided no evidence to the contrary.

Substantively, Tucker alleges that UWM discriminated against him on the basis of his race, treated him differently than other employees, failed to correct workplace behavior that amounted to discrimination, and retaliated by firing him when he threatened to report such behavior to human resources. (R.1, PageID.2-7.)

### *The relevant contract terms*

The Employment Agreement contains a mandatory arbitration provision, which states that "[i]f a material dispute arises out of the employment relationship between the parties or under this Agreement … the parties shall submit such dispute to binding arbitration." (R.6-1, §32, PageID.67.) This provision specifically applies to "any discrimination or other statutory claims." (*Id.*)

In relevant part, the arbitration provision reads as follows:

> **32. <u>Arbitration.</u>** If a material dispute arises out of the employment relationship between the parties or under this Agreement (other than a breach by the Employee of Sections 8 and 12 through 26, inclusive, for which the Company shall be entitled to equitable relief), the parties shall submit such dispute to binding arbitration and such arbitration shall otherwise comply with and be governed by the provisions of the expedited employment arbitration rules of the American Arbitration Association …
>
> … BY SIGNING THIS AGREEMENT, EMPLOYEE ACKNOWLEDGES THAT HE OR SHE IS GIVING UP THE RIGHT TO A TRIAL IN A COURT OF LAW AS TO ANY DISCRIMINATION OR OTHER STATUTORY CLAIMS, AND

3

IS HEREBY AGREEING TO SUBMIT ALL SUCH CLAIMS
TO BINDING ARBITRATION.

(R.6-1 at PageID.67, capitalization in original.)

### *Tucker's claims*

Tucker's Complaint contains eight counts. All are statutory, and all allege generally that he encountered discrimination and retaliation in the context of his employment. There is no dispute that all of these claims arose out of his employment relationship with UWM; each count expressly alleges as much:

- In Count I, alleging retaliation in violation of 42 U.S.C. § 1981, Tucker alleges that UWM "deprived [him] of the same rights as are enjoyed by … those who are not African-American," and retaliated when Tucker "complained of and opposed unlawful racial discrimination." (R.1, ¶¶47-49, PageID.8). He alleges that UWM's purported retaliation caused him "loss of earnings and earning capacity, loss of career opportunities," and other adverse consequences affecting his employment. (*Id*. ¶53, PageID.8.)

- In Count II, alleging racial discrimination in violation of 42 U.S.C. § 1981, Tucker again alleges that UWM "deprived [him] of the same rights as are enjoyed by … those who are not African-American," and that as a result of this treatment, "the terms, conditions, and privileges of [his] employment were adversely affected, and [he] was unlawfully terminated." (*Id*. ¶57, ¶60, PageID.9-10.)

4

- In Count III, alleging harassment and discrimination on the basis of race in violation of 42 U.S.C. § 2000e, *et. seq.* ("Title VII"), Tucker alleges he "was subjected to offensive communication and/or conduct on the basis of his membership in this protected class," and that this "was intended to or in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, or offensive work environment." (*Id.* ¶68, ¶71, PageID.11-12.)

- In Count IV, alleging discrimination on the basis of race in violation of the Michigan Elliott-Larsen Civil Rights Act, MCL § 37.2101, *et. seq.* ("ELCRA"), Tucker's allegations are virtually identical to the ones raised in Count III. (*Id.* ¶76, ¶78, PageID.12-13.)

- In Count V, alleging retaliation in violation of Title VII, Tucker alleges that he engaged in "protected activity" under the statute, and that after he did so, UWM "took adverse employment actions against" him. (*Id.* ¶85, ¶87, PageID.14.)

- In Count VI, alleging retaliation in violation of ELCRA, Tucker's allegations are virtually identical to the ones raised in Count V. (*Id.* ¶97, ¶99, PageID.15-16.)

- In Count VII, alleging a hostile workplace environment in violation of Title VII, Tucker alleges his workplace environment was "intimidating,

5

hostile, or abusive," and that the conduct and communications causing the environment were "intended to, or in fact did, substantially interfere with Plaintiff's employment." (*Id*. ¶108, ¶111, PageID.17-18.).

- In Count VIII, alleging a hostile workplace environment in violation of ELCRA, Tucker's allegations are virtually identical to the ones raised in Count VII. (*Id*. ¶118, ¶121, PageID.19.)

There is no dispute that each of these claims is statutory, and there is also no dispute that each arose out of Tucker's employment with UWM. The claims therefore fall within the scope of the parties' Employment Agreement.

### *Procedural history*

UWM responded to Tucker's Complaint by filing a Motion to Dismiss and Compel Arbitration, invoking the arbitration provision in the Employment Agreement. (R.6.) Tucker filed a response (R.7) and UWM filed a Reply (R.9).

After a hearing, the District Court issued an Opinion considering the parties' arguments regarding the scope of the Federal Arbitration Act, 9 U.S.C. § 1, *et. seq.* ("FAA"), and a motion seeking dismissal under Fed. R. Civ. P. 12(b)(6). (R.13 PageID.116-117.) The Court noted that because Tucker made "several arguments regarding the validity of the contract," this put "the 'making of the agreement in issue.'" *Id*. at PageID.118, citing *Jackson Memmer v. United Wholesale Mortg.*, No. 23-CV-11261, 2023 WL 8818298, at *3 (E.D. Mich. Dec. 18, 2023). The Court then

6

concluded that while UWM presented evidence showing the existence of the parties' contract, Tucker presented no contrary evidence, and he "failed to present evidence of a genuine dispute of material fact as to the validity of the agreement to arbitrate." (R.13, PageID.118-119.)

The District Court then ruled that the arbitration provision was binding, and it covered all of Tucker's claims. It granted UWM's motion and dismissed the case. (*Id.*, PageID.123-124.) This appeal followed.

## SUMMARY OF ARGUMENT

On appeal, Tucker "challenges that … there was no question regarding the existence of a valid contract to arbitrate, given the information contained in the above factual paragraphs," and that "no binding and enforceable agreement was entered into sufficient for the Court to find that he knowingly gave up his constitutional right to a trial by jury." (Brief of Appellant Pages 3, 7.)

The Argument section of Tucker's Brief seems to raise the following arguments, although none is separately identified as an Issue Presented: (a) that the Michigan Supreme Court is allegedly "taking up the matter of whether it is a public policy violation to require arbitration or employment discrimination claims" (*id.* at Page 6); (b) that no agreement was entered into and there was no mutuality of agreement (*id.* at 7-8); (c) that various case law does not support the District Court's ruling (*id.* at 9-11); and (d) in a brand-new argument, never raised in the District

7

Court, that "Defendant cannot meet its burden of proof as it relates to procedural fairness" (*id*. at 12).

Each of these arguments is addressed below. In sum, the District Court correctly applied the law requiring arbitration of all of Tucker's claims. That ruling should be affirmed.

## ARGUMENT

## I.  THE DISTRICT COURT CORRECTLY COMPELLED TUCKER TO ARBITRATE HIS CLAIMS.

### A. The standard of review is de novo.

This Court reviews de novo a District Court's ruling on whether to compel arbitration pursuant to the FAA. *Burden v. Check Into Cash of Kentucky, LLC*, 267 F.3d 483, 487 (6th Cir. 2001), citing *Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir. 2000). Under the FAA, a District Court's consideration of a motion to compel arbitration is limited to determining whether the parties entered into a valid agreement to arbitrate, and does not reach the merits of the parties' claims. *Great W. Mortgage Corp. v. Peacock,* 110 F.3d 222, 228 (3d Cir. 1997).

"[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp.,* 878 F.2d 167, 169 (6th Cir. 1989) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

This Court also reviews de novo a District Court's grant of a motion to dismiss under Fed. R. Civ. P. 12, as well as a motion for summary judgment under Fed. R. Civ. P. 56. *Cacevic v. City of Hazel Park*, 226 F.3d 483, 491 (6th Cir. 2000), citing *Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir. 1997).

Questions of statutory interpretation and statutory application are likewise reviewed de novo. *Deutsche Bank Nat. Tr. Co. v. Tucker*, 621 F.3d 460, 462 (6th Cir. 2010), citing *In re Ruehle,* 307 B.R. 28, 31 (6th Cir. BAP 2004). The language of the statute itself is the starting point in statutory interpretation. *United States v. Plavcak,* 411 F.3d 655, 660 (6th Cir. 2005).

## B.    The relevant statutory framework compels arbitration.

As Tucker acknowledges, the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), governs whether this dispute must be submitted to arbitration. *See Fazio v. Lehman Bros.*, 340 F.3d 386, 392 (6th Cir. 2003) (outlining the "threshold determinations" a "district court must make … before compelling arbitration"); *see also Lancaster v. Comcast Comm's Mgmt. LLC*, No. 16-14446, 2017 WL 3616494, at *1, 3, 6 (E.D. Mich. Aug. 23, 2017) (arbitration agreement fell within scope of FAA where plaintiff brought employment discrimination claims under federal and Michigan law); *McIntyre v. First Fin. Grp.*, No. 1:12-CV-00740, 2012 WL 5939931, at *4 (W.D. Mich. Nov. 27, 2012) ("FAA is applicable to state as well as federal claims.").

9

The FAA provides that a "written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Employment contracts," such as the Employment Agreement at issue here, "are covered by the FAA." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002); *see also Lancaster*, 2017 WL 3616494, at *3.

In considering whether to compel arbitration, the Court must consider four issues: (1) "whether the parties agreed to arbitrate"; (2) whether the claims fall within the "scope of that agreement"; (3) "if federal statutory claims are asserted … whether Congress intended those claims to be nonarbitrable"; and (4) if some but not all of the claims are subject to arbitration, whether to stay the remainder of the proceedings pending arbitration. *Fazio*, 340 F.3d at 392.

"It is a well-established rule that any doubts regarding arbitrability should be resolved in favor of arbitration." *Id.* Moreover, "the FAA preempts state laws and policies regarding arbitration." *Id.* "State contract law, however, governs in determining whether the arbitration clause itself was validly obtained." *Id.*

Here, the District Court correctly ruled that the parties entered into an agreement to arbitrate, and that all of Tucker's claims—all of which are statutory—are covered by that agreement.

**C.    Various pending Michigan Supreme Court applications, and their potential impact on Michigan public policy, do not affect the District Court's ruling.**

Tucker's first argument is a one-paragraph assertion that "the Michigan Supreme Court is taking up the matter of whether it is a public policy violation to require arbitration or employment discrimination claims." (Brief of Appellant at Page 6.) This is not the same argument Tucker raised in the District Court; both arguments are incorrect and meritless.

In the District Court, Tucker contended that the Michigan Supreme Court was "considering striking mandatory arbitration for all claims under the Elliot Larson Civil Rights Act," citing to *Saidizand v. GoJet Airlines, LLC*, 6 N.W.3d 401 (Mich. 2024). But that is not accurate. *Saidizand* was held in abeyance by the Michigan Supreme Court pending a decision on a different case, *Rayford v. Am. House Roseville I, LLC*, 6 N.W.3d 63 (Mich. 2024). *Rayford*, however, is considering an entirely different issue: whether a shortened contractual limitations period was enforceable in a particular type of pre-dispute arbitration agreement. In an earlier iteration of *Rayford*, the Michigan Court of Appeals held that under current law, such provisions are enforceable and routinely upheld. *See Rayford v. Am. House Roseville I, LLC*, No. 355232, 2021 WL 5984155, at *2 (Mich. Ct. App. Dec. 16, 2021), citing *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 30; 772

11

NW2d 801 (2009); *Clark v DaimlerChrysler Corp*, 268 Mich App 138, 142; 706 NW2d 471 (2005).

But whether that issue may or may not be addressed by the Michigan Supreme Court in the near future is irrelevant here, because the District Court did not dismiss Tucker's claims in connection with a contractually shortened limitations period. Rather, the District Court ordered that Tucker's claims must be arbitrated.

Now, on appeal, Tucker has modified his argument somewhat, asserting instead that the Michigan Supreme Court *could potentially* rule, in the future, that public policy precludes arbitration of employment discrimination claims. (Brief of Appellant Page 6.) To the extent this argument was not raised in the District Court, this Court should not review it. "The general rule in this court is that an argument not properly presented in district court is unpreserved for appeal." *Nitch v. E. Gateway Cmty. Coll.*, No. 20-4016, 2021 WL 2030081 (6th Cir. May 21, 2021), citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008). This rule both "eases appellate review" and "ensures fairness to litigants by preventing surprise issues from appearing on appeal." *Id.*

The argument is substantively incorrect in any event. For starters, "the FAA preempts state laws and policies related to arbitration." *Fazio*, 340 F.3d 386, 392-93 (6th Cir. 2003). Moreover, to the extent public policy considerations are implicated at all, Tucker's argument has it backwards. In reality, public policy *favors* arbitration

of disputes, *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004), including employment disputes. *Id*. 498-499, quoting *Circuit City Stores v. Adams,* 532 U.S. 105, 122–23, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) ("Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts … arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law … by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.").

In sum, Michigan's public policy has no role in this case, because it is preempted by the FAA, which strongly favors arbitration of employment disputes such as Tucker's. This argument is meritless.

**D.    The District Court correctly concluded that the parties entered into an agreement to arbitrate.**

Tucker next argues that the District Court erred when it ruled the parties entered into a valid agreement to arbitrate. This argument is also meritless.

As noted above, the first inquiry for the District Court was "whether the parties entered into a valid agreement to arbitrate." *Peacock,* 110 F.3d at 228. Under section 4 of the FAA, the Court may "consider only narrow issues: those 'relating to

13

the making and performance of the agreement to arbitrate.'" *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 837 (6th Cir. 2021), quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S. Ct. 1801, 1806, 18 L. Ed. 2d 1270 (1967). If, after hearing from the parties, the District Court is satisfied that the "making of the agreement" "is not in issue," the Court must compel arbitration. 9 U.S.C. § 4. If instead the District Court finds that the "making of the arbitration agreement" *is* "in issue," it must then proceed summarily to a trial on that disputed question. *Id.*

This Court has held that "Rule 56's standards govern whether a court should hold a trial under § 4 when a party alleges that no contract exists." *Boykin*, 3 F.4th at 838. Under this standard, the party seeking to enforce an arbitration agreement has "the initial duty to present evidence that would allow a trier of fact to find all required elements of a contract." *Id*. 839.

Here, the District Court correctly ruled that UWM satisfied its burden to present evidence showing an agreement to arbitrate between Tucker and UWM. It noted that "UWM has presented a *prima facie* case that a valid contract exists, and Tucker has failed to present evidence of a genuine dispute of material fact as to the validity of the agreement to arbitrate." (R.13, PageID.118-119.) More specifically, the District Court noted:

> UWM presents with its Motion the Wohlgamuth Declaration, which states Tucker signed the agreement through an online

14

system which required him to create a password and profile. ECF No. 6-1 at PageID.58, ¶ 3. Tucker does not dispute this. He simply states he did not recall signing an arbitration agreement and does not believe he would have done so without further explanation. See ECF No. 7 at PageID.81. A "naked assertion ... by a party to a contract that it did not intend to be bound by the terms thereof is insufficient to place in issue the making of the arbitration agreement" for the purposes of Section 4 of the Federal Arbitration Act.

*Id.*, PageID.120-121, citing *Hardaway v. Aveanna Healthcare*, LLC, No. 23-12246, 2024 WL 2271826, at *3 (E.D. Mich. May 20, 2024); *Mazera v. Varsity Ford Mgmt. Servs.*, LLC, 565 F.3d 997, 1002 (6th Cir. 2009); *Brown v. Heartland Emp. Servs., LLC*, No. 19-11603, 2020 WL 2542009, at *4 (E.D. Mich. May 19, 2020).

This analysis was more than sufficient. UWM presented evidence showing that both parties entered into the Employment Agreement, and Tucker did not present any evidence to the contrary. He does not even deny that he signed the contract. As a result, the District Court correctly ruled that the parties entered into an agreement to arbitrate.

**1.    There was mutuality of agreement.**

Tucker next contends that even if an agreement exists, there is no mutuality for a host of reasons, including that (a) UWM "did not address the manner in which [the contract] was presented to Plaintiff nor did the provided document have numbered pages"; (b) "he does not recall signing an arbitration agreement and has no idea what it means nor if [sic] its significance"; (c) UWM did not demonstrate

15

"that Plaintiff had adequate time to review the alleged agreement" or "that anyone explained it to him"; and (d) he "was never told what he was signing nor did he understand the document or its significance." (Brief of Appellant Page 14.)

The District Court rejected each of these arguments. UWM presented more than sufficient evidence showing how the agreement was presented to Tucker, how Tucker accessed it electronically using his unique personal login, and how he used that login information to sign it. The District Court recognized all of this, stating:

> … considering the facts in the light most favorable to Tucker, the Court finds mutuality of agreement through the documentation demonstrating an electronic signature unique to Tucker and the fact that he has not affirmatively denied signing the document.

(R.13, PageID.122.)

**a.    The way the agreement was presented does not affect mutuality.**

Tucker makes various unsupported assertions regarding how he received the Employment Agreement. But these arguments do not challenge the evidence provided by UWM, nor do they cite any other evidence about what *actually happened*. Instead, Tucker points to the absence of additional evidence, asserting generally that UWM did not explain the minutiae of how it delivered the contract to Tucker. Of course, none of this changes the fact that Tucker signed the contract.

More directly, Tucker makes the vague assertion that UWM did not sufficiently address "the manner or circumstance surrounding the presentation of [the Employment Agreement] to Plaintiff." (Brief of Appellant Page 13.) But this

16

does not somehow nullify Tucker's subsequent decision to sign it. To be clear, Tucker did not produce any evidence, nor did he state in his Declaration, that he signed the contract as a result of fraud or while under duress. Rather, he argues that UWM has not explained whether the contract was emailed, whether a paper copy was presented, or whether Tucker was "told just to check a box to sign." (*Id.*) Importantly, Tucker does not contend that any of these things did or did not happen. He has not offered, and is not offering, any evidence about *what he did*, or *what UWM did*, when the contract was presented, reviewed, and signed; he is arguing that UWM should be punished for not providing *more* of this kind of evidence.

This is a meritless argument. Tucker points to no authority suggesting this type, or volume, of evidence was necessary in order to establish mutuality. It was not. And, in any event, UWM *did* provide sworn testimony, as noted above, that:

- Tucker himself created credentials and a password enabling him to access UWM's online employment and onboarding system;

- he logged in to UWM's system using those unique credentials; and

- he then electronically signed the Employment Agreement. (R.6-1, PageID.53.)

The Agreement itself shows Tucker added his signature electronically on December 16, 2021 at 11:50 p.m. (R.6-1, PageID.69.) Tucker does not deny any of this. This evidence establishes mutuality, and that Tucker signed the Employment Agreement.

Tucker also complains that the Employment Agreement did not have

17

numbered pages. (*Id.*) Again, he points to no authority suggesting a lack of page numbers affects mutuality, much less that it somehow nullifies his signature. Rather, it is well settled that the signatures of both parties on the Employment Agreement is, by itself, conclusive evidence of mutuality. See *Brown v. Heartland Employment Services, L.L.C.*, No. 19-cv 11603, 2020 WL 2542009, at *3 (E.D. Mich. May 19, 2020).

### b.    Tucker's purported lack of memory and understanding also do not affect whether a contract was formed.

Next, Tucker argues that he "does not recall signing an arbitration agreement" and that he was unaware of its significance. But, again, it is well settled that this does not create a triable fact issue. The Sixth Circuit has held that "[a] party thus cannot expect to obtain a trial under § 4 simply by testifying that the party does not 'remember' signing an arbitration contract or receiving information about arbitration." *Boykin*, *supra*, 3 F.4th at 840.

There was no genuine issue of material fact on this question. Essentially, Tucker argues that because he *did not recall* whether the contract contained an arbitration provision, and because he *did not understand* what the contract said, he never really *agreed* to arbitrate. But the District Court correctly noted that this was not in any sense a denial by Tucker that he signed the contract, nor was it evidence that he did not act knowingly and voluntarily. If Tucker is arguing he did not act knowingly or voluntarily, he was required to present evidence proving that. But there

18

is no such evidence—because Tucker *did* act knowingly and voluntarily when he signed the Employment Agreement.

A number of plaintiffs in a number of cases have attempted to employ this very same tactic—suggesting they do not remember, or did not fully understand, the terms of the contracts they signed—and in each case, courts have uniformly held that this does not create a genuine issue of material fact as to whether an agreement to arbitrate was formed. *See Brown v Heartland Employment Services, LLC*, No. 19-cv-11603, 2020 WL 2542009 (E.D. Mich. May 19, 2020); *Jackson Memmer*, *supra,* 2023 WL 8818298, at *5 ("plaintiff's statements here, which are nearly identical to Brown's statements in *Heartland*, are likewise insufficient to create a genuine dispute of material fact with respect to mutuality of agreement") (R.10-3, PageID.128); *Kassandra Memmer v United Wholesale Mortgage*, No. 23-cv-10921 (E.D. Mich. Jan. 16, 2024); *Gavette v. United Wholesale Mortgage*, No. 23-cv-11856 (E.D. Mich. July 31, 2023).

In *Brown*, the plaintiff submitted a declaration stating that she "did not see" the arbitration provision in question; that she did not remember seeing the arbitration materials or clicking a button acknowledging them; and that if she did acknowledge them, she "did not intend to be bound to arbitration." *Brown* at *4. This is almost identical to the arguments advanced here by Tucker. As the District Court noted, *Brown* rejected this line of argument, stating:

19

… Brown's declaration fails to place the validity of the contract at issue under Sixth Circuit law. Concerning her allegation that she did not click "Acknowledge" with the intent of binding herself to the terms of the MAA, the Sixth Circuit has favorably quoted caselaw stating that a " 'naked assertion ... by a party to a contract that it did not intend to be bound by the terms thereof is insufficient to place in issue 'the making of the arbitration agreement' for the purposes of Section 4 of the Federal Arbitration Act.' " *Mazera*, 565 F.3d at 1002 (citations omitted).

… employees may be bound by their signatures on an arbitration agreement even if they do not remember signing the agreement and even if they state that they never saw the policy. *DeOrnellas v. Aspen Square Mgmt., Inc.*, 295 F. Supp. 2d 753, 764 (E.D. Mich. 2003). *DeOrnellas* summarized Sixth Circuit precedent to reach this conclusion, as well as the "general rule that 'one who signs a contract which he has had an opportunity to read and understand, is bound by its provisions.'"

*Brown, supra*, at *4 (citations omitted); *see also Hardaway v. Aveanna Healthcare, LLC*, No. 23-12246, 2024 WL 2271826, at *3 (E.D. Mich. May 20, 2024) (where an employee "does not *remember* signing the agreement and did not *intend* to agree to arbitrate, she can still be compelled to arbitrate if she in fact signed the agreement.") (emphasis in original), citing *Sutton v. U.S. Small Bus. Admin.*, 92 F. App'x 112, 125–26 (6th Cir. 2003) ("Michigan law 'presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its contents.' ").

The same analysis applies here. Tucker's arguments do not create a genuine issue of material fact as to whether a valid agreement to arbitrate was formed. It is well settled that "[o]ne who signs a contract is presumed to know its contents." *Stout*

*v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000) (finding parties agreed to arbitrate despite claims of fraud, where "Plaintiffs seem to argue that there is fraud in the transaction, but point to no actual evidence that either they were deceived into signing something they believed to be other than an agreement to arbitrate, or that they had not in fact signed the arbitration agreement"), quoting *Sears, Roebuck & Co. v. Lea,* 198 F.2d 1012, 1015 (6th Cir. 1952). This Court applies "the cardinal rule that, in the absence of fraud or wilful deceit, one who signs a contract which he has had an opportunity to read and understand, is bound by its provisions." *Allied Steel and Conveyers, Inc. v. Ford Motor Co.,* 277 F.2d 907, 913 (6th Cir. 1960).

As noted in *Boykin*, a genuine issue of material fact might have been created if Tucker had issued an "unequivocal denial" that he signed the Employment Agreement, in "the form of admissible evidence." *Boykin*, 3 F.4th at 840; *see generally Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.*, 663 F.2d 4, 7 (2d Cir. 1981) ("To make a genuine issue entitling the plaintiff to a trial by jury, an unequivocal denial that the agreement had been made was needed, and some evidence should have been produced to substantiate the denial"). In other words, only if Tucker had *unequivocally denied* signing the Employment Agreement—and provided admissible evidence in support of that denial—would there be a potential question of fact as to whether the parties agreed to arbitrate this dispute. But Tucker made no such denial. To the contrary, his vague assertion that he did not fully

21

understand the implications of what he was signing is an implicit admission that he did in fact sign the Employment Agreement. In fact, the District Court noted this inconsistency, remarking that "Tucker's affidavit is somewhat contradictory in that he states he does not recall signing the document but then also seems to suggest that he did, but no one explained document to him." (R.13, PageID.122.)[1]

### c. Tucker's argument regarding whether the contract was "explained" to him is meritless.

Finally, Tucker also makes a series of assertions contending that UWM did not prove that "anyone explained" the contract to him, or that he was advised to "find

---

[1] Very recent Michigan case law has approved and reaffirmed the validity of this analysis. In *Johnson v. Best Buy Co., Inc.*, No. 363807, 2024 WL 1228760, at *3 (Mich. Ct. App. Mar. 21, 2024), the Michigan Court of Appeals held:

> Plaintiff next argues the arbitration policy was not explained to her, suggesting defendant had a duty to explain and make its terms clear to her. "Michigan law presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its contents." "A contracting party has a duty to examine a contract and know what the party has signed, and the other contracting party cannot be made to suffer for neglect of that duty." Defendant presented unrebutted evidence that plaintiff electronically agreed to the terms of the arbitration provision. Indeed, plaintiff does not deny clicking "I Agree" twice, once on her employment application and again when accepting the offer of employment, showing her acceptance of the arbitration policy. Accordingly, plaintiff has not provided evidence placing into question whether she knowingly and voluntarily entered into the arbitration agreement. Plaintiff had the burden to provide that evidence as the party who sought to avoid the agreement, and simply stating the agreement was not explained to her does not relieve plaintiff of her duties to perform under the agreement she voluntarily entered into and was presumed to understand. (Internal citations omitted.)

an attorney to review and explain the contract to him." (Brief of Appellant Page 14.)

Again, these arguments have it backwards; the validity of the contract does not hinge

on whether UWM took affirmative steps to ascertain Tucker's understanding before

he signed it. The point is, he signed it. Furthermore, the Employment Agreement

contains a provision *immediately preceding* Tucker's signature that states, in bold

and italic print:

### READ THIS AGREEMENT BEFORE SIGNING

> ***As evidenced by Employee's signature below, Employee hereby acknowledges that he or she has read and understood all of the terms and conditions of this Agreement, that Employee agrees to the terms and conditions of this Agreement, and that this Agreement is binding upon Employee in accordance with its terms.***

(R.6-1, PageID.69, all emphasis in original.)

The plaintiff in the aforementioned *Jackson Memmer* case made identical

arguments. And those arguments were *also* identical to the ones made in *Brown v*

*Heartland*. The *Jackson Memmer* Court stated:

> … the plaintiff points to his declaration, where he states that he "do[es] not recall signing an arbitration agreement and … had no idea what it meant or its significance," "was never told what he was signing nor did [he] understand the document or its implications," … and he "would not have signed an arbitration agreement without further explanation of what arbitration is, how it works, and how it applies to the employment agreement for representation." … However, the plaintiff does not unequivocally deny that he signed the Employment Agreement. *See Boykin*, 3 F. 4th at 840 ("[A]n 'unequivocal denial' that takes the form of admissible 'evidence' can create a genuine dispute of fact."

(quoting *Interbras Cayman Co. v. Orient Victory Shipping Co.*, 663 F.2d 4, 7 (2d Cir. 1981))).

The defendant cites *Brown v Heartland Employment Services, LLC*, No. 19-11603, 2020 WL 2542009 (E.D. Mich. May 19, 2020), in response. In *Heartland*, this Court analyzed whether the defendant-employer, Heartland, was entitled [to] an order compelling the plaintiff-employee, Mary Brown, to arbitrate claims she had raised against it. *See id.* at *3. After determining that Heartland had met its *prima facie* burden, this Court further determined that Brown's declarations "that she knows she did not see the MAA"; "that she does not remember seeing the slideshow or clicking 'Acknowledge;' and that if she clicked 'Acknowledge,' she did not intend to be bound to arbitration" were insufficient to demonstrate a genuine dispute of material fact with respect to whether Brown had electronically signed the parties' disputed arbitration agreement. *Id.* at *4.

The plaintiff's statements here, which are nearly identical to Brown's statements in *Heartland*, are likewise insufficient to create a genuine dispute of material fact with respect to mutuality of agreement. *See also Boykin*, 3 F. 4th at 840 ("A party thus cannot expect to obtain a trial under § 4 simply by testifying that the party does not 'remember' signing an arbitration contract or receiving information about arbitration.").

*See Jackson Memmer, supra*, 2023 WL 8818298, at *5.

Tucker's arguments in this case are equally meritless. Tucker and UWM mutually agreed that claims arising out of their employment relationship must be arbitrated. The Employment Agreement was validly formed, and its arbitration provision is valid and enforceable.

## E.    All known case law supports the District Court's decision.

Tucker next contends that various case law cited by UWM in the District

Court does not support the order compelling arbitration. This is not accurate. UWM provided the Court with a comprehensive summary of Sixth Circuit law showing that all of Tucker's claims may be, and regularly are, arbitrated. In other words, the claims are not ones that Congress or any authority intended not to be arbitrable.

As a starting point, the arbitration provision in the parties' Employment Agreement requires arbitration of any "material dispute aris[ing] under th[e] Agreement," making it "broad" under Sixth Circuit precedent, and there is no express provision excluding Tucker's claims. *See Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576–77 (6th Cir. 2003) ("When a contract contains an arbitration clause, there is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' Where the arbitration clause is broad, only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators"), quoting *AT&T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Here, the parties' Employment Agreement does not contain an express provision excluding this dispute, or these claims, from the scope of the arbitration provision. To the contrary, Tucker's Employment Agreement *expressly includes* and

covers "ANY DISCRIMINATION OR OTHER STATUTORY CLAIMS." (R.6-1 at § 32, PageID.67, all caps in original.) This covers all of his claims.

As noted, Tucker does not dispute, nor could he, that his claims arise out of his employment and Employment Agreement. Each of the claims is statutory, and each expressly invokes and is premised upon the parties' employer-employee relationship. Each claim alleges that Tucker's employment was negatively impacted as a result of UWM's actions. For all of these reasons, his claims fall within the scope of the arbitration provision. *See also, e.g., Panepucci v. Honigman Miller Schwartz & Cohn LLP*, 281 F. App'x 482, 484, 486–87 (6th Cir. 2008) (holding that a variety of claims, including discrimination and retaliation claims brought under the ADA, ELCRA, Title VII, and MPWDCRA, fell within scope of arbitration clause governing a "controversy or claim arising under or related to the [Employment] Agreement"); *Milestone v. Citrus Specialty Grp., Inc.*, No. 8:19-CV-2341-T-02JSS, 2019 WL 5887179, at *2 (M.D. Fla. Nov. 12, 2019), *appeal dismissed*, No. 19-14935-JJ, 2020 WL 1243600 (11th Cir. Jan. 2, 2020) (Plaintiff's claims fell within scope of arbitration provision in employment contract because claims were not expressly excluded; "Plaintiff's rights under [discrimination] statutes exist because of her status as an employee," and "this status arises from the terms of the employment agreement"); *McGee v. Armstrong*, No. 5:11CV2751, 2014 WL

3012879, at *3–5, 8 (N.D. Ohio July 3, 2014) (holding that various discrimination claims fell within scope of similarly broad arbitration provision).

Tucker's federal statutory claims were brought under 42 U.S.C. § 1981 and Title VII. As noted in UWM's motion to dismiss (R.6, PageID.48), is well settled that all such claims are arbitrable:

- Claims brought under 42 U.S.C. § 1981 are arbitrable. *See Hillery v. Genisys Credit Union*, No. 23-11452, 2023 WL 6627969, at *2 (E.D. Mich. Oct. 11, Case 2:23-cv-13134-SFC-APP ECF No. 6, PageID.48 Filed 01/10/24 Page 21 of 24 12 2023) ("Plaintiff's argument against compelling arbitration is that Congress intended to exempt claims brought under 42 U.S.C. § 1981 from the FAA. However, there is no authority to support plaintiff's position, and even the Supreme Court has determined that a claim under § 1981 was arbitrable."); *ShaZor Logistics, LLC v. Amazon.com, LLC*, 628 F. Supp. 3d 708, 713 (E.D. Mich. 2022) ("Congress did not intend § 1981 claims to be nonarbitrable."); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010) (sending § 1981 action to arbitration); *Richardson v. Universal Tech. Inst. of Ariz., Inc.*, No. 1:06-CV-858, 2007 WL 1343672, at *3 (W.D. Mich. May 8, 2007) ("[T]he Court concludes that Richardson's claims under § 1981 and the Elliott-Larsen Act are arbitrable.").

- Claims brought under Title VII are also arbitrable. *See Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 312 (6th Cir. 1991) (enforcing arbitration of Title VII claims); *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 509 (6th Cir. 2004) ("[W]e decided that Congress did not intend to exclude Title VII claims from arbitration."); *Debro v. French*, 15-14225, 2017 WL 927622, at *4 (E.D. Mich. Feb. 16, 2017), report and recommendation adopted, 15-CV-14225, 2017 WL 914216 (E.D. Mich. Mar. 8, 2017) ("The Court also agrees with defendants that the Title VII claims are subject to the FAA.").

Similarly, both Michigan and federal courts agree that Tucker's state law claims under ELCRA are arbitrable. *See e.g., Hunt v. Macy's Retail Holdings, Inc.*, 08-14307-BC, 2009 WL 349359, at *4 (E.D. Mich. Feb. 10, 2009) (granting "motion to compel arbitration and dismiss complaint . . . with respect to Plaintiff's ELCRA claims"); *Rembert v. Ryan's Fam. Steak Houses, Inc.*, 596 N.W.2d 208, 226 (Mich. App. 1999) (holding that "[n]either the CRA nor the PWDCRA inhibit arbitration of claims").

None of this is meaningfully disputed, nor could it be. All of Tucker's claims are covered by the parties' agreement to arbitrate, and all are arbitrable as a matter of law.

**F.  Tucker's new argument regarding "procedural fairness" is unpreserved, and also meritless.**

The last paragraph of Tucker's appeal brief purports to add in a brand-new argument based on procedural fairness. The argument is not fully fleshed out—and it does not cite to a single piece of record evidence—but, in general, Tucker suggests that he "was never given adequate notice nor did he knowingly waive his right to litigate claims in court." (Brief of Appellant Page 18.)

The argument is unpreserved, and the Court should not entertain it. This Court is "a court of review, not of first view." *Byrd v. Haas*, 17 F.4th 692, 700 (6th Cir. 2021). A party forfeits an issue by failing to timely assert it, "even if the party does so unintentionally." *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022). And it is well settled that "an argument not raised before the district court is waived on appeal to this Court." *Abell v. Sky Bridge Res., LLC*, 715 F. App'x 463, 472-473 (6th Cir. 2017) (declining to review argument that was not raised below when it was "entirely a question of fact, not one of law"), quoting *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 615 (6th Cir. 2014) (citation omitted). Only when the waiver rule " 'would produce a plain miscarriage of justice' or when there are exceptional circumstances" will this Court consider an argument not raised below. *Id.*, quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008). Here, Tucker does not argue there are any circumstances that justify his failure to raise this issue, or even plead such facts, below.

Moreover, Tucker offers zero evidence in support of his assertion that he "was never given adequate notice" of the arbitration provision. Tucker's declaration does not state that he never received an opportunity to read the Employment Agreement, or that he requested and was refused more time to read it. He does not state what he considered "adequate time" or inadequate time, and he does not state that he was pressured, rushed, or hurried in any way. Simply, there is no actual evidence in the record—no testimony and no documents—supporting this argument.

The argument is meritless in any event. It is a cardinal rule of contract law, recognized by the Supreme Court more than a century ago, that a party is bound by a contract even if he did not read its contents. *Heiges v. JP Morgan Chase Bank, N.A.*, 521 F. Supp. 2d 641, 648 (N.D. Ohio 2007), citing *Upton v. Tribilcock,* 91 U.S. 45, 50, 23 L.Ed. 203 (1875). Thus, to the extent Tucker is arguing he should not be bound by the Employment Agreement because he signed it without reading it, his argument fails. Similarly, to the extent Tucker is arguing that he needed more time— or that he was not given sufficient time—to read the Employment Agreement, that argument has also been rejected by courts in this Circuit. In *Hooks v. Saxon Mortg., Inc.*, No. 1:05CV2651, 2006 WL 8448335 (N.D. Ohio June 20, 2006), the plaintiffs argued they should not be bound by an arbitration provision contained in a series of mortgage documents. The plaintiffs argued that "they did not have time to carefully read the contracts, they were never given copies of the original loan papers," *4, and

"that they were hurried and pressured through the process of signing the agreements." *Id.* at *4, *6. But the Court rejected this argument because there was not actual evidence supporting it. The Court stated:

> Plaintiffs, however, have not put forward any evidence, not even an affidavit, to support their assertion that they were indeed rushed through signing the agreements. Plaintiffs do not even describe how long they were given to read the agreements, under what conditions they reviewed them, or what sort of pressure was applied. *Compare Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377, 383 (S.D.N.Y. 2002) (finding an arbitration agreement unenforceable where employer gave employee only fifteen minutes to read a sixteen-page document and threatened that the employees who did not sign the agreement would not be promoted). Given the other factors weighing in favor of finding that the Arbitration Riders are enforceable, the Court cannot rely only on Plaintiffs' bare assertions to invalidate these agreements. Indeed, even the time it would take to sign one's name on these Riders would permit a borrower to read the capitalized text just four lines above the signature line which reads "THIS IS A VOLUNTARY ARBITRATION AGREEMENT."

*Hooks v. Saxon Mortg., Inc.*, No. 1:05CV2651, 2006 WL 8448335, at *6 (N.D. Ohio June 20, 2006); *see also Hardaway*, *supra*, at *4 (rejecting employee's similar unsupported claims "that she lacked sufficient opportunity to review," and noting the Sixth Circuit "has held even five to ten minutes was adequate where the employee did not request more time"), citing *Solomon v. CARite Corp.*, 837 F. App'x 355, 363 (6th Cir. 2020).

The same is true here. As noted above, Tucker's declaration does not state that he was rushed, describe how long he was given to read the agreement, under what

31

conditions it was reviewed, or that any pressure was applied encouraging him to sign. There is no evidence of any of this. This argument was simply not advanced in the District Court. In short, there is no record evidence at all that Tucker was rushed, pressured, or hurried into signing the Employment Agreement, or that he wanted or needed more time before signing.

A party contesting the making of an arbitration agreement must "produce some evidence to substantiate his factual allegations." *American Heritage Life Insurance Company v. Orr*, 294 F.3d 702, 710 (5th Cir. 2002), citing *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992). In *Orr*, the parties challenged an arbitration agreement by submitting affidavits claiming they did not understand the agreement, and that the agreements had not been explained to them. *Id.* The Court found this insufficient, stating:

> Other than their self-serving affidavits, Appellants have not submitted a whisper of evidence to support the conclusion that a jury trial is warranted under § 4 of the FAA. Raising issues of the Agreements' procedural or substantive unconscionability, as Appellants have in the instant case, is not the equivalent of questioning the "making" of an arbitration agreement.

*Id.; see also Hooks, supra*, at *7-8 (" 'a naked assertion' by a party that he did not intend to be bound by an arbitration agreement is not sufficient to put the making of the agreement in issue").

In sum, a party's "failure to 'carefully' read a contract does not permit a party to be free from its terms." *Hooks, supra*, at *6, citing *ABM Farms, Inc. v. Woods*, 81

Ohio St. 3d 498, 503 (1998). The arbitration provision in this case is clear and unambiguous, and it should be enforced as written. The District Court's Opinion compelling Tucker to arbitrate should be affirmed.

## G.   Dismissal was appropriate.

Finally, Tucker's case was appropriately dismissed, rather than stayed. Tucker does not challenge this decision on appeal.

The FAA contemplates "stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *Waffle House*, 534 U.S. at 289 (citing 9 U.S.C. §§ 3, 4). But if no stay is requested, dismissal is appropriate. *See Smith v. Spizzirri*, 601 U.S. 472, 472, 144 S. Ct. 1173, 1174 (2024); *see also Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.") (citation omitted).

The U.S. Supreme Court decided *Smith v. Spizzirri* shortly before the District Court decided this case. Importantly, *Spizzirri* holds that when a court grants a motion to compel arbitration, it must stay the underlying lawsuit *only if* a stay has been requested. *Id*. 472. If no party requests a stay, *Spizzirri* does not require one; it merely holds that "[w]hen a district court finds that a lawsuit involves an arbitrable

dispute *and a party has requested a stay* of the court proceeding pending arbitration, § 3 compels the court to issue a stay, and the court lacks discretion to dismiss the suit." *Id*. 472 (emphasis added). The District Court in this case noted that the stay required by *Spizzirri* generally applies "where the party seeking arbitration has requested a stay … a situation not present here." (R.13, fn2, PageID.123.)

Numerous District Courts, including at least three within the Sixth Circuit, have agreed that dismissal is still appropriate, post-*Spizzirri*, when no party requests a stay. In *Brown v. U.S. Xpress, Inc.*, No. 1:23-CV-1200, 2024 WL 2700079, at *1 (W.D. Mich. May 24, 2024), the Western District of Michigan ordered that the plaintiff's claims must be arbitrated; it then dismissed, rather than stayed, the case, concluding that when neither party requests a stay, "the Court retains discretion over whether to stay or dismiss this action." *Id*. *See also Schwartz v. Next Net Media LLC, et al*, No. 24-CV-10018, at *5 2024 WL 3236709 (E.D. Mich. June 28, 2024) (same); *Davis v. Ally Fin. Inc.*, No. 23-22897, 2024 WL 2239144, at *4 (D.N.J. May 17, 2024) ("[t]he Court dismisses rather than stays this case because neither party made a request for a stay pending arbitration"); *Hejamadi v. Midland Funding, LLC*, No. 18-cv-13203, 2024 WL 3159316, at *6 (D.N.J. June 25, 2024) ("[d]ismissal, rather than a stay, of this action is the appropriate course because neither party has requested a stay pending arbitration").

Here, the District Court was correct to dismiss the case.

## CONCLUSION AND RELIEF REQUESTED

Defendant-Appellee UWM respectfully asks this Court to affirm the District

Court.


Date: December 23, 2024                    Respectfully submitted,

                                           _/s/ James W. Rose_____
                                           James W. Rose (P66473)
                                           Taft Stettinius & Hollister LLP
                                           Attorneys for Defendant-Appellee
                                           27777 Franklin Rd., Ste. 2500
                                           Southfield, MI 48034
                                           (248) 351-3000

35

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i), because:

- it contains 8,317 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as counted by the word count tool in Microsoft Word; and

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A), because:

- it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Date: December 23, 2024                Respectfully submitted,

   /s/ James W. Rose
James W. Rose (P66473)
Taft Stettinius & Hollister LLP
Attorneys for Defendant-Appellee
27777 Franklin Rd., Ste. 2500
Southfield, MI 48034
(248) 351-3000

36

## <u>DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS</u>

| RECORD NO. | DESCRIPTION OF ENTRY | ELECTRONIC RECORD PAGE ID NOS. |
|---|---|---|
| 1 | Complaint | PageID.1-20 |
| 6 | UWM's Motion to Dismiss and Compel Arbitration | PageID.28-51 |
| 6-1 | Employment Agreement (with Declaration) | PageID.52-74 |
| 7 | Tucker's Response to UWM's Motion to Dismiss and Compel Arbitration | PageID.75-94 |
| 9 | UWM's Reply | PageID.96-106 |
| 13 | Opinion and Order Granting Motion to Dismiss and Compelling Arbitration | PageID.113-124 |

Date: December 23, 2024

Respectfully submitted,

  /s/ James W. Rose
James W. Rose (P66473)
Taft Stettinius & Hollister LLP
Attorneys for Defendant-Appellee
27777 Franklin Rd., Ste. 2500
Southfield, MI 48034
(248) 351-3000
jrose@taftlaw.com

170024594v5